IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **B.F. B/N/F NICOLE HARRISON,** and **NICOLE HARRISON,** *individually*     *Plaintiffs* | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:18-cv-2380 |
| **KLEIN INDEPENDENT SCHOOL DISTRICT AND MIRTHA HERNANDEZ,** *individually*     *Defendants* | § § § § | |

## FIRST ORIGINAL COMPLAINT

B.F. (the "Student") by and through his next friend and mother, Nicole Harrison, and Nicole Harrison, *individually,* (collectively herein "Plaintiffs") files this their First Original Complaint alleging that the Klein Independent School District (hereinafter referred to as "KISD" or the "School District") and Mirtha Hernandez, *individually*, violated the various rights of B.F. as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts as permitted by law. In support thereof, Plaintiffs would respectfully show this tribunal the following:

### I. BRIEF INTRODUCTION TO THE CASE

1. B.F. is now 10 years old and is a child with a disability. Over the course of the Spring 2017 semester B.F. was repeatedly injured by a Klein ISD staff member, Defendant Mirtha Hernandez. Even though the District was aware of Hernandez's propensity to injure B.F., they did nothing to prevent the injuries and in fact, attempted to cover them up.

2. There is not a week, often even a day that goes by where there is not a media story about the plight of a young person who is bullied, harassed, or even physically assaulted at their school. Frankly, it is a national epidemic. Unlike the task of containing the spread of a flu virus

by means of vaccines and treatment, this type of epidemic is particularly difficult to treat because often the school district itself, as in B.F.'s situation, is part of the illness and refuses to recognize its own responsibility. KISD's failure is troublesome as they were on notice as to the assaults, abuse, and injuries B.F. received at the hands of KISD personnel and did nothing about it.

3. For a family, there is nothing sadder than seeing their own child suffer. To give meaning to their child's experience, they feel compelled to tell their story. They feel a duty to do so in the hope that the presentation of their story will prevent the same from happening to another family. In the course of this telling, these victims benefit from a healing effect. The healing and empowering effect are even more pronounced when the story is told before a neutral tribunal, as Plaintiffs have chosen to do in his case, so that the bright light and sanitizing effect of federal law and the tribunal's gaze is focused on this important issue and KISD's failures.

4. In regard to the above, Plaintiffs bring causes of action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; the *Americans with Disabilities Act,* 42 U.S.C. §12131, *et seq.* ("ADA"); the Fourth Amendment of the Constitution of the United States pursuant to 42 U.S.C. §1983; as well as the *Due Process Clause* and *Equal Protection Clause* of the Fourteenth Amendment of the Constitution of the United States pursuant to 42 U.S.C. §1983.

## II. JURISDICTION

5. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution, laws and rules of the United States, as noted herein.

## III. VENUE

6. Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Southern District of Texas,

Houston Division.

## IV. PARTIES

7.     B.F. lives with his mother, Nicole Harrison, his step-father, Derek Tappin, and brother at 20126 Yellow Canyon Falls Drive; Tomball, 77375.They live within the Klein Independent School District catchment area.

8.     The Klein Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, B.F. was a student at the Klein Independent School District. KISD may be served by and through their counsel of record, Amy Tucker of Rogers, Morris & Grover, L.L.P; 5718 Westheimer, Suite 1200; Houston, Texas 77057.

9.     Mirtha Hernandez is an individual living in Harris County, Texas. Ms. Hernandez may be served at 4122 Pinebridge Lane, Spring, Texas 77388.

## V. STATEMENT OF FACTS

### A.     ABOUT B.F.

10.     B.F. is now 10 years old and is diagnosed with Angelman's Syndrome[1], epilepsy, and Chiari Type 1[2]. B.F. re-enrolled[3] in KISD in August 2016 when he was in third grade. The family has had multiple issues regarding B.F.'s care at school. For instance, B.F. has arrived home after school on multiple occasions soaked in urine.

---

[1]  Angelman syndrome (AS) is a rare neuro-genetic disorder that occurs in one in 15,000 live births. Angelman syndrome is often misdiagnosed as cerebral palsy or autism due to lack of awareness. Characteristics or symptoms of Angelman syndrome include developmental delay, lack of speech, seizures, and walking and balance disorders. Individuals with Angelman syndrome will require life-long care. *See https://www.angelman.org/what-is-as/.*

[2]  Chiari malformation type 1 is a structural abnormality of the cerebellum, the part of the brain that controls balance, and the skull. The malformation occurs when the lower part of the cerebellum extends below the foramen magnum (the large hole at the base of the skull which allows passage of the spinal cord), without involving the brainstem.

[3]  B.F. attended kindergarten at KISD, moved thereafter, and moved back to begin school at KISD in August 2016.

*First Original Complaint*                                                                                                           3

11.     Then, starting in September 2016, B.F. began receiving bruises and scratches while at school.

### B.     2017 ANKLE INJURY

12.     On March 22, 2017, B.F. arrived home after school on the school bus and was limping. B.F.'s mother immediately emailed B.F.'s teacher to inquire about his injury. B.F.'s teacher explained that she was out of classroom most of that day and that no one noticed that B.F. was limping.

13.     The next day, B.F. was unable to walk due to his injury and stayed home from school. B.F.'s mother took him to the emergency room that day. The x-ray showed a sprain and torn ligaments and soft tissue damage to B.F.'s ankle, and the physician at the ER instructed B.F.'s mother to perform RICE (rest, ice, compression, elevation).

14.     Due to his injury, B.F. stayed home from school for the next few days. In addition, B.F. suffered from acute pain due to the injury for the next month and a half and continues to suffer the effects of the injury. He also would pull away from his mother when she attempted to put shoes on his feet after the incident.

15.     Upon request, B.F.'s mother was able to watch the video footage of the incident in which her son's ankle was injured.

16.     In the video, B.F. is standing in a corner and Ms. Hernandez approaches him, forcefully grabs him by his arm, and pulls him to make him walk faster.

17.     Then, Ms. Hernandez purposefully lets B.F. go, knowing he would fall down.

18.     The video shows B.F. on the floor crawling around. Other children in the classroom approach him and begin pushing and hitting him, and no one stops this.

### C. 2017 HEAD INJURY

19. On or about April 26, 2017, the KISD school nurse called B.F.'s mother at approximately 2:30 PM.

20. The nurse explained that B.F. sustained another injury, this time to his head. She reported that B.F. was bleeding a lot, but she was able to stop the bleeding. Further, B.F. did not need to be picked up because he was getting on the bus to go home.

21. The nurse explained that she was told that the injury occurred because the classroom aide, Ms. Hernandez permitted him to fall down again, even though she could have prevented the fall.

22. That day, B.F. got off the bus at home with a gash in his head, and he was still bleeding. B.F.'s mother called the school nurse who instructed B.F.'s mother to take B.F. to urgent care, which she did. At urgent care, the medical providers glued the gash on his head shut; they explained that they would normally use staples but used glue instead due to B.F.'s special needs. Once again, B.F.'s mother was able to watch the video footage of the incident in which her son's head was injured.

23. In the video, B.F. and Ms. Hernandez are standing face-to-face, and Ms. Hernandez is holding onto both of B.F.'s wrists while the children are in line.

24. B.F. is attempting to sit down and Ms. Hernandez is purposefully pulling on him. Ms. Hernandez pulls B.F. toward her and pushes him back and purposefully lets him go, and he falls into a cabinet and injures his head, causing it to bleed profusely.

### D. THE INCIDENT VIDEOS

25. Sometime after August 2016, cameras were installed in B.F.'s classrooms.

26. On April 26, 2017, after B.F.'s head injury, B.F.'s mother requested the videos of the

head injury incident.

27. B.F.'s mother received a phone from Echo Mansfield, the KISD special education director, who stated that she needed to review the videos first and– if there was anything to be seen– she would let her know. She also told B.F.'s mother that she had 10 days to respond to the request to watch the videos.

28. B.F.'s mother was finally able to view the videos of the head injury incident on May 24, 2017. Also in attendance were Principal Cassandra Christian, Dr. Mary Rosenberg (director of student support services), and B.F.'s stepfather.

29. KISD told B.F.'s mother that the classroom aide who assaulted and abused B.F., Mirtha Hernandez, had been terminated. They also told her that B.F.'s teacher was being allowed to resign. Additionally, KISD had contacted Child Protective Services (CPS) and the District Police Department about the incident.

30. In or about the beginning of June 2017, B.F.'s mother spoke again with Ms. Mansfield and requested to view the ankle video. Again, Ms. Mansfield stated that she would need to review the video first.

31. At or about mid-June 2017, Ms. Mansfield resigned abruptly and her replacement, Kirsten Allman, called B.F.'s mother regarding the resignation. Shortly thereafter, B.F.'s mother was finally able to view the ankle injury video in or about July 2017. Also in attendance were Principal Cassandra Christian, B.F.'s father, and B.F.'s step-father.

32. Despite numerous requests, KISD refused to produce copies of all the videos of the incidents where B.F. was injured at the hands of school staff until after Plaintiff initiated litigation.

### E. BUS INCIDENTS

33. B.F. returned to school on August 2017, but he was placed at a different campus at KISD due to the effects of the previous assaults and abuse.

34. In or about late September 2017, B.F.'s mother learned that B.F.'s morning bus driver was yelling and screaming at him on the school bus.

35. On September 26, 2017, B.F.'s teacher, Carolyn Gay, emailed B.F.'s mother that B.F. had been upset when exiting the school bus in the morning.

36. That day, B.F.'s mother was at the school and asked about the email. In addition, she called the head of special transportation, Shauna Jones, regarding the issue who told her that the bus driver was being assigned a new route and receiving training.

37. The school principal, Eve Messina, watched a video of B.F. on the school bus and called B.F.'s mother regarding the verbal abuse B.F. received from the bus driver.

38. In addition, Shauna Jones watched the previous 2 weeks of video footage from B.F.'s time on the bus with the bus driver and found additional incidents where the bus driver yelled and screamed at B.F.

### F. THE FAILURES OF THE SCHOOL DISTRICT

39. KISD failed to investigate the assaults or give the parents notice of their procedural and substantive rights under *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. §794.

40. Upon information and belief, KISD never reported the actual facts surrounding the assaults and abuse to CPS.

41. Upon information and belief, KISD never conducted or completed investigations into the assaults and abuse on B.F.

42. After the assaults and abuse, KISD never provided the family information identifying the

KISD Section 504 Coordinator.

43. KISD never provided the family information about their right to file a formal grievance with the KISD.

44. KISD never provided the family information about their right to file a formal complaint with the Office of Civil Rights.

45. KISD never provided any of the remedies required under Section 504, OCR Guidelines, or the KISD School Board's own policies and procedures.

46. Moreover, KISD failed to implement appropriate safety measures to prevent future assaults and abuse and provide a safe environment for B.F.

47. KISD failed to address the impact of the assaults and abuse on and discrimination against B.F.

48. This discrimination based on his disability stands in direct contrast to his constitutional rights and statutory rights.

### G. THE EFFECTS OF THE ASSAULTS AND ABUSE ON B.F.

49. After the abuse, understandably, B.F. was traumatized and his negative behaviors increased.

50. As a direct result of KISD's acts and omissions, it is evident they failed to adequately hire, train, or supervise their employees, and B.F. sustained severe damages due to such failures.

### VI. CLAIMS PURSUANT TO THE REHABILITATION ACT OF 1973

51. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

52. Klein ISD receives federal funds and thus follows the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

53. The implementing regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

54. Plaintiffs assert that because KISD has failed to provide B.F. a safe and non-hostile educational environment, such failures as noted above, have together and separately, contributed to violating his rights pursuant to Section 504, and the federal rules and regulations promulgated pursuant thereto.

55. In a similar vein, and likewise in addition and in the alternative, KISD's failures as set forth herein, constituted a gross deviation from professional standards of care.

56. Likewise, and also in addition and in the alternative, B.F. was a victim of discrimination based upon disability by KISD.

57. Such failures and refusals caused injuries to Plaintiffs.

## VII. CLAIMS PURSUANT TO THE AMERICANS WITH DISABILITIES ACT

58. In addition and in the alternative to the above, the facts as previously described demonstrate that KISD also violated B.F.'s rights as contemplated by the *Americans with Disabilities Act*, 42 U.S.C. §12131, *et seq.* ("ADA").

59. B.F. is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2), having emotional and learning disabilities that affect major life functions, including learning, mental health, and socialization with others.

60. Klein Independent School District is a "public entity" as defined in 42 U.S.C. §12131(1)

and receives federal financial assistance so as to be covered by the mandate of the ADA.

61. Klein Independent School District and its schools are facilities and their operation constitutes a program and services for ADA purposes.

62. Specifically, and separate and apart from his Section 504 cause of action, Plaintiffs allege that KISD failed and refused to reasonably accommodate and modify the services needed by B.F. based upon his disability, in violation of Title II of the ADA.

63. Further, B.F. has a private cause of action against KISD for their violation of the rules and regulations promulgated pursuant to the ADA.

64. Such failures caused injuries to Plaintiffs.

## VIII. VIOLATIONS OF THE 4TH AMENDMENT TO THE U.S. CONSTITUTION

65. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

66. At all times pertinent hereto, Defendant Mirtha Hernandez was acting in her capacity as an employee for the Defendant School District, and therefore acting under the color of the law.

67. Her actions and omissions, which caused B.F.'s Constitutional deprivations are thus enforceable pursuant to 42 U.S.C. §1983.

68. The restraint of B.F. by Defendant Hernandez was unreasonable.

69. The restraint of B.F. by Defendant Hernandez was unnecessary.

70. The restraint of B.F. by Defendant Hernandez was excessive.

71. As such, all these acts by Defendant Hernandez violated the rights of B.F. pursuant to the Fourth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

72. Such failures caused injuries to Plaintiffs.

## IX. CLAIMS RELATED TO THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

73. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, above with the same force and effect as if herein set forth.

74. The acts and omissions of Defendant Hernandez singularly discriminated against B.F. when treating him in a disparate manner as compared to other students similarly situated, thereby violating his rights pursuant to the *Equal Protection Clause* of the Fourteenth Amendment, for which B.F. seeks recovery pursuant to 42 U.S.C. §1983 and 1988.

75. Such failures caused injuries to Plaintiffs.

## X. PLAINTIFF'S CONSTITUTIONAL RIGHT TO BODILY INTEGRITY

76. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

77. At all relevant times, Ms. Hernandez was acting in her capacity as a Klein ISD staff member on behalf of the Defendant School District, and therefore acting under the color of the law. Her actions and omissions which caused B.F.'s Constitutional deprivations are enforceable pursuant to 42 U.S.C. §1983.

78. Specifically, and at all times relevant hereto, B.F. possessed both a substantive and procedural due process right, including, but not limited to, a liberty interest in his bodily integrity.

79. Specifically, and at all times relevant hereto, B.F. possessed both a substantive and procedural due process right, including, but not limited to, a privacy interest in his bodily integrity.

80. Specifically, and at all times relevant hereto, B.F. possessed both a substantive and procedural due process right, including, but not limited to, a dignity interest in his bodily

integrity.

81. The acts and omissions of Defendant Hernandez were deliberately indifferent to the overall health, safety and welfare of B.F. and his bodily integrity, and deprived him of this constitutional rights to privacy and dignity thereby.

82. Such failures caused injuries to Plaintiffs.

## XI. **<u>PLAINTIFFS CONSTITUTIONAL RIGHT TO AN EDUCATION</u>**

83. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

84. The actions or inactions of Defendants also violated B.F.'s rights under the Constitution of Texas and the Constitution of the United States as to a free and proper education.

85. Under Article 1, Sections 3 and 4 of the Texas Constitution, it is stated:

> All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services. Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin.

86. Further, Under Article 1, Sections 3 and 4 of the Texas Constitution, it is also stated:

> "A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

87. Under the 14th Amendment of the Constitution of the United States it states:

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state where they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without the due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

88. Accordingly, B.F. possess a property interest in his education.

89. The aforesaid Defendant Hernandez willfully disregarded B.F.'s protected property

interest in his education as guaranteed by both the Constitution of the United States and the Constitution of Texas in the manners and particulars noted above.

90. As a direct and proximate result of the Defendant's unconstitutional acts, B.F. sustained a deprivation of constitutionally protected educational opportunities.

91. Such failures caused injuries to Plaintiffs.

## XII. NICOLE HARRISON'S INDIVIDUAL CLAIMS

92. Nicole Harrison seeks damages and reimbursement for economic losses she incurred and will continue to incur as a result of the acts and omissions by KISD and Mirtha Hernandez as set forth herein.

93. Such economic losses include, but are not limited to, losses due to time off work and medical expenses.

## XIII. RATIFICATION

94. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

95. Klein ISD ratified the acts, omissions, and customs of school district personnel and staff.

96. As a result, Klein ISD is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of B.F.

## XIV. PROXIMATE CAUSE

97. Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

98. Each and every, all and singular of the foregoing acts and omissions, on the part of KISD, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XV. **SPOLIATION**

99. Plaintiffs hereby require and demand that KISD preserve and maintain all evidence pertaining to any claim or defense related to the assaults and/or abuse or other violations making the bases of this complaint and request for due process or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the assaults and/or abuse or other violations set forth herein.

100. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XVI. **DAMAGES**

101. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

102. As a direct and proximate result of KISD's conduct, B.F. has suffered injuries and damages, for which he is entitled to recover herein including but not limited to:

    a. Loss of educational opportunities;

    b. Decrease in earning potential;

    c. Physical pain in the past;

    d. Physical pain in the future;

    e. Medical expenses in the past;

    f. Medical expenses in the future;

    g.  Mental anguish in the past;

    h.  Mental anguish in the future;

    i.  Physical impairment in the past;

    j.  Physical impairment in the future; and

    k.  Various out-of-pocket-expenses incurred by his family but for the acts and omissions of KISD.

## XVII. PRAYER

Plaintiffs pray for judgment against KISD in the manner and particulars noted above, jointly and severally, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorneys' fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Section 504, the ADA, and 42 U.S.C. 1983 and §2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, as well any equitable issues noted above; and for such other relief as this Court deems just and proper whether in law or in equity or both.

Respectfully submitted,

/s/ *Marty Cirkiel*
Mr. Martin J. Cirkiel
SBN 00783829
Federal ID No. 21488
Ms. Holly Griffith Terrell, *Of Counsel*
State Bar No. 24050691
Federal ID No. 1034278
Cirkiel & Associates, P.C.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com  [Email]
holly@cirkielaw.com [Email]

Mr. Anthony O'Hanlon
**Anthony O'Hanlon, P.C.**
SBN 15235520
Federal ID No. 3122684
111 South Travis Street
Sherman, Texas 75090
(903) 892-9133 [Telephone]
(903) 957-4302 [Facsimile]
aohanlon@somlaw.net [Email]

**ATTORNEYS FOR PLAINTIFFS**